# UNITED STATES DISTRICT COURT
for the
Northern District of Florida – Gainesville Division

| | | |
|---|---|---|
| JUSTINA TILLMAN<br>*Plaintiff,*<br><br>**-v-**<br><br>SAINT MARY'S UNIVERSITY OF MINNESOTA<br>*Defendants.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.____________________________<br><br><br>**<u>COMPLAINT AND JURY DEMAND</u>** |

**CIVIL ACTION**

*This action arises from Saint Mary's University of Minnesota's negligent, misleading, and procedurally improper handling of Plaintiff's academic standing during her enrollment in the University's APA-accredited Psy.D. program. Despite repeated notice that Plaintiff's internship environment had become hostile, unstable, and procedurally irregular, Saint Mary's failed to investigate, intervene, or provide accurate academic guidance. Instead, the University advised Plaintiff to resign from her internship without disclosing that such a resignation would automatically trigger academic dismissal under its own policies, resulting in the loss of her doctoral degree pathway, psychologist licensure trajectory, and more than five years of academic and clinical investment.*

Plaintiff JUSTINA TILLMAN, by and through undersigned counsel, brings this action against Defendant SAINT MARY'S UNIVERSITY OF MINNESOTA to redress the severe harms caused by their respective misconduct, and alleges as follows:

## INTRODUCTION

1. This action arises from Saint Mary's University of Minnesota's negligent, misleading, and procedurally improper handling of Plaintiff's academic standing during her APA-accredited Psy.D. program. Despite repeated notice that Plaintiff's internship environment had become hostile, unstable, and procedurally irregular, Saint Mary's failed to investigate,

intervene, or provide accurate academic guidance. Instead, Saint Mary's advised Plaintiff to resign from her internship without disclosing that such a resignation would automatically trigger academic dismissal under University policy.

2. Relying on Saint Mary's representations, Plaintiff resigned under coercive circumstances and was dismissed from the Psy.D. program within 24 hours, resulting in the loss of her doctoral degree pathway, psychologist licensure trajectory, and more than five years of academic and clinical investment. Plaintiff brings state-law claims for breach of contract, breach of the implied covenant of good faith and fair dealing, negligent misrepresentation, negligent academic advising, and promissory estoppel.

## JURISDICTION AND VENUE

3. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a) because Plaintiff is a citizen of Florida, Defendant Saint Mary's University of Minnesota is a citizen of Minnesota, and the amount in controversy exceeds $75,000, exclusive of interest and costs. Diversity jurisdiction is therefore proper.

4. This Court has personal jurisdiction over Defendant Saint Mary's University of Minnesota because it purposefully availed itself of the privilege of conducting activities within Florida and directed its conduct toward this forum. Defendant required Plaintiff to complete an internship as a condition of graduation, approved and maintained academic oversight for Plaintiff's placement at a clinical training site located in Gainesville, Florida, and engaged in ongoing advising, supervision, and decision-making concerning Plaintiff's internship while she was located in Florida. Defendant further directed Plaintiff to resign from the Florida-based internship and made the decision to dismiss Plaintiff from its program based on events occurring within this District. Plaintiff's claims arise directly out of and relate to these Florida-based activities, and the

exercise of jurisdiction over Defendant comports with traditional notions of fair play and substantial justice.

5. Venue is proper in the Northern District of Florida under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Plaintiff completed a required, University-approved, APA-accredited internship in Gainesville, Florida, which was a mandatory component of Defendant's doctoral program. The conduct at issue, including Defendant's advising, directives, and decisions concerning Plaintiff's internship status and academic standing, was directed to and carried out while Plaintiff was physically present in this District, and the resulting academic, professional, and economic injuries were sustained in this District.

**PARTIES**

6. At all times relevant hereto, Plaintiff JUSTINA TILLMAN is an adult resident of Gainesville, Florida.

7. At all times relevant hereto, Defendant SAINT MARY'S UNIVERSITY OF MINNESOTA ("Saint Mary's") was and is a private, nonprofit university organized under the laws of Minnesota, with its principal place of business located at 2500 Park Avenue, Minneapolis, Minnesota 55404. Saint Mary's is a citizen of Minnesota for purposes of 28 U.S.C. § 1332 and may be served at its principal office at the address listed above.

8. The true names and capacities of persons or entities, whether individual, corporate, associate, or otherwise, who may be responsible for some of the claims alleged herein are currently unknown to Plaintiff. Plaintiff will seek leave from the court to amend this complaint to reflect the true names and capacities of such other responsible parties when their identities become known.

## FACTUAL BACKGROUND

9. Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates the same as if fully set forth at length herein.

10. Plaintiff was enrolled in the APA-accredited Psy.D. in Counseling Psychology Program at Saint Mary's University of Minnesota ("Saint Mary's"), with an anticipated graduation date of June 7, 2025. By that time, Plaintiff had successfully completed more than five years of doctoral-level training.

11. By the time of her dismissal from the Psy.D. program, Plaintiff had successfully completed all required coursework and requirements except for the internship itself and her dissertation, passed her qualifying examinations on the first attempt, and completed three practicum placements. She matched to an APA-accredited pre-doctoral internship at the North Florida/South Georgia Veterans Health System ("VA") which she began in August 2024. The Plaintiff was also well on her way to completing her dissertation prior to the anticipated graduation date.

12. Completion of the internship was a mandatory component of Plaintiff's doctoral degree and psychologist licensure pathway, and Saint Mary's required Plaintiff to complete the internship as a condition of graduation.

13. Almost immediately after beginning her internship, Plaintiff was subjected to inconsistent expectations, contradictory directives, shifting performance criteria, and escalating scrutiny by VA supervisors, creating an unstable and unpredictable training environment.

14. The VA's Director of Training ("DOT") routinely raised her voice, used accusatory and hostile language, and engaged in supervisory conduct that was intimidating, unprofessional, and inconsistent with APA training standards.

15. The DOT's conduct caused Plaintiff significant emotional distress; Plaintiff

regularly cried during group supervision sessions due to the DOT's combative tone and hostile treatment.

16. As an African American woman, Plaintiff experienced repeated microaggressions, cultural insensitivity, and pressure to adopt a "white-presenting lens," further contributing to a hostile and discriminatory training environment.

17. Plaintiff was the only intern denied a major rotation, an essential training component, without justification, materially disrupting her training trajectory and placing her at a disadvantage compared to similarly situated interns.

18. Plaintiff disclosed documented cognitive and neurological limitations related to a prior seizure event, including attentional and executive-functioning challenges, and requested clarity, structure, and support.

19. Despite these disclosures, VA personnel failed to initiate or facilitate the mandatory Reasonable Accommodation process required for Health Professions Trainees under federal policy.

20. Instead of providing accommodations, VA supervisors dismissed Plaintiff's disability-related symptoms as "excuses," escalated disciplinary actions, and increased scrutiny of her performance.

21. In early 2025, VA personnel accused Plaintiff of "dishonesty" based on unintentional discrepancies in her 2023 Association of Psychology Postdoctoral and Internship Centers ("APPIC") application, discrepancies that Plaintiff explained were the result of misunderstanding transcript codes and cognitive oversight, not deceptive intent.

22. Plaintiff provided a clear explanation that the errors stemmed from the absence of a transcript legend and her good-faith belief that "NC" meant "Incomplete," yet VA personnel disregarded her explanation.

23. VA personnel used these alleged discrepancies as a pretext to intensify probation, question Plaintiff's ethical competence, and justify further adverse actions, despite Plaintiff's documented progress and positive evaluations in multiple areas.

24. On March 31, 2025, VA supervisors informed Plaintiff that they intended to terminate her internship, an action that, under Saint Mary's own academic policies, would automatically result in academic dismissal from the Psy.D. program. Saint Mary's was aware of this consequence and understood that any internship termination, regardless of cause, would immediately jeopardize Plaintiff's degree progress.

25. Plaintiff was not provided with a meaningful opportunity to respond, contest the allegations, or pursue an appeal through APPIC or internal VA procedures.

26. On April 1, 2025, an APPIC consultant advised Plaintiff that she had the right to appeal any termination decision and that resignation was not required or advisable.

27. Despite this, Saint Mary's representatives, along with VA personnel, repeatedly pressured Plaintiff to resign from the internship, stating that resignation would be "better" or "preferable," while failing to disclose that resignation would still result in automatic academic dismissal under Saint Mary's policies. Saint Mary's advice was given at a critical moment when Plaintiff relied on the University for accurate academic guidance.

28. Under coercive pressure, misinformation, and without the benefit of due process, Plaintiff submitted a resignation on April 2, 2025.

29. Plaintiff's resignation was not voluntary; it was the direct product of coercion, misinformation, and procedural failures by Saint Mary's, compounded by the unstable and hostile conditions at the internship site. Saint Mary's actions and omissions deprived Plaintiff of the ability to make an informed decision and directly contributed to her coerced resignation.

30. On April 3, 2025, less than 24 hours after the coerced resignation, Saint Mary's

dismissed Plaintiff from the Psy.D. program, citing the resignation as a third "No Credit" grade, despite knowing the circumstances surrounding the resignation and the coercive conduct of the VA.

31. Saint Mary's failed to provide Plaintiff with clear appeal rights, failed to investigate the hostile and discriminatory conditions reported at the internship site, and failed to take any steps to protect Plaintiff's academic standing, despite repeated notice of concerns. As the institution responsible for Plaintiff's degree progress and internship oversight, Saint Mary's had a duty to intervene, advise accurately, and ensure that internship placements remained educationally appropriate and safe.

32. Saint Mary's had repeated and contemporaneous notice that Plaintiff's internship environment had become unstable, discriminatory, and procedurally irregular. Despite this notice, the University conducted no inquiry, gathered no information, and took no steps required under its own policies to ensure that the internship remained an appropriate training site.

33. Saint Mary's faculty affirmatively advised Plaintiff to resign from the internship, even after being informed that resignation would trigger dismissal, constituting negligent academic advising and a breach of the University's obligations to its student.

34. Saint Mary's failed to follow its own written policies, including procedural protections, appeal timelines, and standards governing academic dismissal, thereby depriving Plaintiff of the fair process promised in its handbook and materials.

35. These failures were not matters of academic judgment or faculty discretion. Rather, they were administrative and procedural obligations, such as providing accurate advising, disclosing the consequences of resignation, offering remediation, and following dismissal procedures, that courts recognize as judicially reviewable duties independent of academic expertise.

36. As a direct and proximate result of Saint Mary's conduct, including its negligent advising, failure to follow its own policies, and failure to provide accurate information or procedural protections, Plaintiff suffered severe emotional distress, loss of her internship placement, loss of her doctoral degree pathway, loss of psychologist licensure trajectory, reputational harm, diminished earning capacity, and other damages to be proven at trial.

37. The conduct challenged in this Complaint does not arise from academic judgment or the exercise of professional educational discretion. Plaintiff does not contest her academic evaluations, grading, or the substantive assessment of her clinical performance. Instead, Plaintiff challenges Defendant's administrative and procedural misconduct, including the provision of materially inaccurate and incomplete information, failure to disclose mandatory academic consequences, failure to follow established and binding University policies, and failure to provide required procedural protections such as notice, remediation, and appeal. These duties are ministerial and contractual in nature and are independent of any academic evaluation. Defendant's actions therefore fall outside the scope of protected academic decision-making and are subject to judicial review.

38. The duties breached by Defendant, as alleged herein, arise from its own written policies, representations, and administrative obligations governing the structure and operation of its academic program. These duties include the obligation to provide accurate information regarding program requirements and consequences, to adhere to mandatory procedures governing academic standing and dismissal, and to provide required procedural protections. Such duties are objective, defined, and capable of judicial review, and do not require the Court to evaluate academic judgment, grading, or the substantive merits of Plaintiff's performance.

39. Resolution of Plaintiff's claims will not require the Court to evaluate academic judgment, professional discretion, or the substantive merits of Plaintiff's performance. Rather,

this action turns on objectively verifiable and non-discretionary conduct, including whether Defendant accurately conveyed the consequences of resignation, whether it adhered to its own mandatory policies and procedures, and whether it provided the procedural protections it expressly promised. These issues are capable of judicial determination without intrusion into academic decision-making.

40. The duties at issue were mandatory and ministerial in nature, arising from Defendant's own written policies, program requirements, and representations to students. These duties did not involve discretionary academic evaluation but instead required Defendant to follow established procedures, provide accurate and complete information, and ensure that adverse academic actions were imposed only in accordance with defined rules. Defendant's failure to carry out these non-discretionary obligations constitutes actionable misconduct under established principles of contract and tort law, and is properly subject to judicial review.

41. Had Saint Mary's fulfilled its contractual, procedural, and advising obligations, including disclosing the consequences of resignation, offering remediation, and ensuring adherence to dismissal policies, Plaintiff would not have resigned, would not have received a third "No Credit" grade, and would not have been dismissed from the Psy.D. program. Saint Mary's failures were the direct and proximate cause of Plaintiff's academic and professional losses.

## COUNT I
## BREACH OF CONTRACT

42. Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates the same as if fully set forth at length herein.

43. At all times relevant, a valid and enforceable contract existed between Plaintiff and Saint Mary's University of Minnesota ("Saint Mary's"), consisting of the University's written

policies, handbooks, program materials, academic requirements, and representations governing the Psy.D. program and the internship component required for degree completion. These documents set forth the rights, responsibilities, procedures, and protections applicable to students, including Plaintiff.

44. These written policies and program materials contained specific, definite, and mandatory procedures governing advising, remediation, appeal rights, and dismissal. They were not aspirational guidelines but binding commitments that governed Saint Mary's obligations to its students, including Plaintiff.

45. Saint Mary's expressly and implicitly promised to provide Plaintiff with a fair, consistent, and procedurally compliant academic process; to follow its stated policies regarding evaluation, remediation, and dismissal; to ensure that internship placements were educationally sound; and to protect students from discriminatory, hostile, or unsafe training environments.

46. Saint Mary's further promised that students would receive clear notice of academic concerns, meaningful opportunities to remediate alleged deficiencies, and access to established appeal procedures before any adverse academic action, particularly dismissal, would be imposed.

47. Saint Mary's knew, or reasonably should have known, that Plaintiff would rely on these promises and procedures when navigating internship-related issues. The University also knew that inaccurate or incomplete information regarding resignation, dismissal, or appeal rights would foreseeably result in severe academic and professional harm.

48. Plaintiff fully performed her obligations under the contract, including completing all coursework, passing qualifying examinations, completing three practicums, securing an APA-accredited internship, and complying with all academic and professional requirements.

49. Saint Mary's breached the contract in multiple material ways, including but not limited to:

a. failing to investigate Plaintiff's repeated reports that her internship site had become hostile, discriminatory, and procedurally irregular, despite Saint Mary's contractual obligation to ensure that internship placements remained educationally appropriate, stable, and safe for its students;

b. failing to intervene or advocate on Plaintiff's behalf despite knowing the internship environment was unstable and harmful;

c. advising Plaintiff to resign from the internship without disclosing that resignation would automatically trigger academic dismissal;

d. failing to provide clear notice of alleged academic deficiencies;

e. failing to offer or implement any remediation plan;

f. failing to follow its own policies governing "No Credit" grades and dismissal thresholds;

g. failing to provide Plaintiff with a meaningful opportunity to appeal; and

h. dismissing Plaintiff from the program within 24 hours of her coerced resignation, without due process or adherence to University procedures.

50. Saint Mary's actions were arbitrary, capricious, and contrary to the contractual promises made to Plaintiff, and no reasonable student would have expected dismissal to occur under these circumstances had the University followed its own policies.

51. Saint Mary's breaches directly caused Plaintiff's dismissal from the Psy.D. program, the loss of her doctoral degree pathway, the loss of psychologist licensure eligibility, and the destruction of more than five years of academic progress.

52. As a direct and proximate result of Saint Mary's breach of contract, Plaintiff suffered significant damages, including loss of tuition and educational investment, loss of professional opportunities, diminished earning capacity, emotional distress, reputational harm, and

other economic and non-economic damages to be proven at trial.

53. Plaintiff is entitled to recover all damages resulting from Saint Mary's breach of contract, together with any other relief the Court deems just and proper.

## COUNT II
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

54. Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates the same as if fully set forth at length herein.

55. Every contract under Minnesota law includes an implied covenant of good faith and fair dealing, which prohibits a contracting party from acting in a manner that unjustifiably hinders the other party's right to receive the benefits of the agreement. This covenant applies to Saint Mary's contractual obligations arising from its handbooks, policies, program materials, and representations governing the Psy.D. program.

56. Plaintiff entered into a contractual relationship with Saint Mary's with the reasonable expectation that the University would act fairly, honestly, and in good faith in administering its academic policies, evaluating her progress, and supporting her through the required internship component of the program.

57. Saint Mary's breached the implied covenant by acting in ways that undermined, frustrated, and deprived Plaintiff of the very benefits of the contract, including the opportunity to complete her doctoral degree, maintain good academic standing, and progress toward psychologist licensure.

58. Saint Mary's acted in bad faith by failing to investigate Plaintiff's repeated reports that her internship site had become hostile, discriminatory, and procedurally irregular, despite knowing that the internship was a mandatory degree requirement and that Plaintiff's academic standing depended on its successful completion. Saint Mary's had an obligation to ensure that

internship placements remained educationally appropriate and safe for its students.

59. Saint Mary's further acted in bad faith by advising Plaintiff to resign from the internship while withholding the critical fact that resignation would automatically result in academic dismissal, thereby depriving Plaintiff of the ability to make an informed decision and sabotaging her degree progress.

60. Saint Mary's also acted in bad faith by failing to provide Plaintiff with clear notice of alleged academic concerns, failing to offer remediation, and failing to provide a meaningful opportunity to appeal, even though its written policies promised such protections.

61. Saint Mary's dismissal of Plaintiff within 24 hours of her coerced resignation, without investigation, due process, or adherence to its own procedures, constitutes arbitrary and capricious conduct that directly frustrated Plaintiff's contractual rights.

62. Saint Mary's actions were not the product of academic judgment exercised in good faith, but rather the result of indifference, procedural shortcuts, and a failure to uphold the University's obligations to its students.

63. As a direct and proximate result of Saint Mary's breach of the implied covenant of good faith and fair dealing, Plaintiff suffered the loss of her doctoral degree pathway, loss of psychologist licensure eligibility, emotional distress, reputational harm, diminished earning capacity, and other economic and non-economic damages.

64. Plaintiff is entitled to recover all damages resulting from Saint Mary's breach, together with any other relief the Court deems just and proper.

**COUNT III**
**NEGLIGENT MISREPRESENTATION**

65. Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates the same as if fully set forth at length herein.

66. Saint Mary's University, through its faculty, administrators, and program representatives, owed Plaintiff a duty to exercise reasonable care when providing information, guidance, and representations regarding academic requirements, internship consequences, program standing, and the effects of resignation from an internship. As an institution providing professional education, Saint Mary's knew or should have known that students rely on such representations when making critical academic decisions.

67. Saint Mary's breached this duty by supplying false, incomplete, or misleading information to Plaintiff regarding the consequences of resigning from her APA-accredited internship. Specifically, Saint Mary's advised Plaintiff to resign without disclosing that resignation would automatically result in academic dismissal under the University's own policies.

68. Saint Mary's further misrepresented that resignation was the "better" or "safer" option, despite knowing that Plaintiff retained the right to pursue available appeal or review mechanisms regarding internship-related actions, and despite knowing that resignation would foreclose those rights and result in automatic academic dismissal under Saint Mary's policies.

69. Saint Mary's also failed to disclose material facts that it had a duty to communicate, including:

a. that Plaintiff's academic standing depended entirely on the internship;

b. that a resignation, coerced or otherwise, would be treated as a third "No Credit" grade;

c. that dismissal would occur automatically and immediately; and

d. that Plaintiff would not be permitted to remediate, appeal, or transfer internship credits.

70. Saint Mary's knew or should have known that Plaintiff would rely on its statements and omissions when deciding how to respond to the VA's escalating misconduct, and that she

lacked the institutional knowledge to understand the full consequences of resignation without accurate guidance.

71. Plaintiff reasonably relied on Saint Mary's representations and omissions, believing that resignation was a viable option that would preserve her academic standing or at least allow for further discussion or appeal.

72. As a direct and foreseeable result of this negligent misrepresentation, Plaintiff resigned under coercive circumstances, was immediately dismissed from the Psy.D. program, and lost her doctoral degree pathway and psychologist licensure trajectory.

73. Plaintiff suffered significant damages, including loss of tuition and educational investment, loss of professional opportunities, diminished earning capacity, emotional distress, reputational harm, and other economic and non-economic damages.

74. Saint Mary's negligent misrepresentations were a substantial factor in causing Plaintiff's harm, and Plaintiff is entitled to recover all resulting damages.

## COUNT IV
## NEGLIGENCE (PROCEDURAL AND ADMINISTRATIVE FAILURES)

75. Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates the same as if fully set forth at length herein.

76. Saint Mary's University owed Plaintiff a duty to exercise reasonable care in adhering to its own mandatory policies, procedures, and administrative requirements governing academic standing, remediation, and dismissal. These duties arose from the University's written policies, program materials, and representations to students, and were ministerial and procedural in nature. To the extent the University provided guidance to Plaintiff, it was required to do so accurately and in accordance with its established policies, given the foreseeable reliance students place on such information when navigating degree requirements.

77. Saint Mary's breached this duty by failing to ensure that its guidance was consistent with its own policies and procedures, particularly at critical junctures involving Plaintiff's academic standing. In connection with Plaintiff's internship status, the University failed to provide complete and policy-compliant information regarding the academic consequences of resignation, despite knowing that the internship was a mandatory degree requirement and that Plaintiff's academic standing depended on its completion.

78. Saint Mary's further breached its duty by failing to follow its own mandatory procedures governing academic evaluation, remediation, and dismissal. The University did not provide Plaintiff with required notice of alleged deficiencies, did not offer remediation as required by its policies, and did not provide a meaningful opportunity to appeal before imposing dismissal.

79. Saint Mary's also failed to investigate Plaintiff's repeated reports concerning the conditions affecting her ability to complete a required program component, despite having an obligation under its policies to ensure that internship placements remained educationally appropriate, stable, and administratively compliant.

80. The failures described herein were not matters of academic judgment or the exercise of professional educational discretion. Plaintiff does not challenge any grading decision, academic evaluation, or assessment of clinical performance. Rather, the University's conduct consisted of administrative and procedural failures, including the failure to follow mandatory policies, failure to provide required procedural protections, and failure to ensure that its actions were consistent with its own established rules. These duties are ministerial and contractual in nature and fall outside the scope of protected academic decision-making.

81. Saint Mary's knew or should have known that Plaintiff relied on its compliance with procedural requirements and its accurate administration of academic policies when making decisions affecting her degree progress, and that failure to adhere to those requirements would

foreseeably result in significant harm.

82. As a direct and proximate result of Saint Mary's procedural and administrative failures, Plaintiff made decisions affecting her academic standing without the benefit of required protections and accurate procedural guidance, resulting in her dismissal from the Psy.D. program and the loss of her doctoral degree pathway and psychologist licensure trajectory.

83. Plaintiff suffered substantial damages, including loss of tuition and educational investment, loss of professional opportunities, diminished earning capacity, emotional distress, reputational harm, and other economic and non-economic damages.

84. Plaintiff is entitled to recover all damages resulting from Defendant's negligence and procedural failures, together with any other relief the Court deems just and proper.

## COUNT V
## PROMISSORY ESTOPPEL

85. Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates the same as if fully set forth at length herein.

86. Plaintiff pleads this claim in the alternative to her breach of contract claim. To the extent that any enforceable contract is found not to exist, or does not govern the representations and promises at issue, Plaintiff is entitled to relief under the doctrine of promissory estoppel.

87. This claim is asserted only to the extent that Defendant disputes the existence, validity, or enforceability of a contract covering the subject matter of the promises relied upon by Plaintiff.

88. Saint Mary's University made clear, definite, and specific promises to Plaintiff regarding the structure, requirements, and protections of the Psy.D. program, including representations that:

a. students would receive accurate academic advising;

b. internship-related issues would be addressed with transparency and procedural fairness;

c. students would be informed of the consequences of major academic decisions;

d. dismissal would not occur without notice, remediation, and an opportunity to appeal; and

e. the University would support students navigating internship-site conflicts or procedural irregularities.

89. Saint Mary's expected and intended that Plaintiff would rely on these promises when making decisions affecting her academic standing, internship participation, and degree progress. These promises were made through faculty guidance, program materials, handbooks, and direct communications with University representatives.

90. Plaintiff reasonably relied on Saint Mary's promises, including the promise that the University would provide accurate information and procedural support during her internship year. Plaintiff also relied on the University's assurances that resignation from the internship was a viable option and would not automatically result in dismissal.

91. Saint Mary's induced Plaintiff's reliance by directing her to resign from the internship while omitting material information necessary for her to make an informed decision, including the fact that resignation would trigger immediate academic dismissal under University policy.

92. Plaintiff's reliance on Saint Mary's promises was foreseeable and reasonable, given the University's superior knowledge of its own policies and its role as the sole authority governing Plaintiff's academic standing.

93. Plaintiff relied on these promises to her detriment, resigning under coercive circumstances and subsequently being dismissed from the Psy.D. program without notice,

remediation, or appeal, contrary to the University's representations.

94. As a direct and proximate result of Plaintiff's reasonable reliance on Saint Mary's promises, Plaintiff suffered substantial harm, including the loss of her doctoral degree pathway, loss of psychologist licensure eligibility, emotional distress, reputational harm, diminished earning capacity, and other economic and non-economic damages.

95. Injustice can be avoided only by enforcing Saint Mary's promises because Plaintiff reasonably and foreseeably relied on those promises to her detriment and suffered substantial harm as a direct result of that reliance.

## PRAYER FOR RELIEF

96. **WHEREFORE,** for the foregoing reasons and pursuant to the Counts above, Plaintiff, JUSTINA TILLMAN, demands judgment against Defendant SAINT MARY'S UNIVERSITY OF MINNESOTA as follows:

a. For compensatory damages in an amount to be determined at trial, including but not limited to loss of educational investment, loss of future earning capacity, and other economic damages;

b. For consequential damages resulting from the loss of Plaintiff's doctoral degree pathway and psychologist licensure trajectory;

c. For damages for emotional distress, reputational harm, and other non-economic injuries;

d. For pre-judgment and post-judgment interest as permitted by law;

e. For costs and expenses incurred in this action; and

f. For such other and further relief as the Court deems just and proper.

## JURY DEMAND

97. Plaintiff demands a trial by jury on all issues so triable, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

## CERTIFICATION

98. Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Dated: August 17, 2026

Respectfully Submitted,

**LLG NATIONAL LAW GROUP**



Robert S. Mactavish
Florida Bar No.: 0596388
Phoenix Corporate Tower
3003 N. Central Avenue
Suite 685
Phoenix, AZ 85012
P: 575-517-6542
robert.mactavish@llgnational.com
*Attorney for Plaintiff*